UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION,

       Respondent-Appellant,

v.                                               No. 1:20-cv-00531-JCH-LF

CARLA CABRERA, as Parent of J.M.,
Student (a minor),

       Petitioner-Appellee,

AND

CARLA CABRERA and VIDAL SILVA,
Parents, Individually and on
behalf of J.M., Student,

       Plaintiffs,

v.                                                 No. 1:20-cv-00532-JCH-LF

BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS
and NEW MEXICO PUBLIC EDUCATION
DEPARTMENT,

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Carla Cabrera and Vidal Silva's ("Plaintiffs'")[1] *Motion for Award of Attorney Fees and Costs Under IDEA* (ECF No. 87). Because Plaintiffs prevailed in the IDEA-portion of this litigation, they are entitled to a reasonable award of $78,990.26.

---

[1] Although only Ms. Cabrera petitioned on behalf of her son in the administrative hearing, the Court will refer to both Ms. Cabrera and Mr. Silva as the "Plaintiffs" in both this Court and in the administrative hearing for ease of reference.

## I.    Background

The Court incorporates the legal, factual, and procedural background from its *Memorandum Opinion and Order* (ECF No. 74) of December 7, 2021. In short, Plaintiffs filed a request for a due process hearing under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against the Albuquerque Public Schools Board of Education ("APS") in November 2019. They claimed that APS failed to provide their minor child, J.M., a free appropriate public education ("FAPE"). *See* Mem. Op. & Order 8 (ECF No. 74).

### A.    The Hearing Officer's First Decision

On May 3, 2020, a Due Process Hearing Officer concluded that Plaintiffs met their burden of proving three violations of a FAPE:

(1) an untimely Multidisciplinary Evaluation Team ("MET") evaluation and resulting Individualized Education Program ("IEP") for characteristics of Dyslexia;

(2) the lack of an evaluation based on suspicion of Tourette Syndrome ("TS"); and

(3) J.M.'s IEPs incorrectly labeled J.M. as an English Learner.

*See* Hearing Officer's Mem. Op. & Order 79 (ECF No. 13-1, at PDF pp. 288, 365). But Plaintiffs failed to meet their burden to prove other alleged violations of a FAPE. *See id.*

For remedies, the Hearing Officer ordered

(1) APS to stop classifying J.M. as an English Learner, and

(2) APS to pay for a pending neurological evaluation.

*Id.* 364-65. But the Hearing Officer denied Plaintiffs' requests for

(1) two years of compensatory education of Wilson Reading System instruction;

(2) audio texts and assistive technology; and

(3) TS-specific training for school staff.

2

*Id*. at 363-64.

**B.      Appeals to this Court and this Court's Decision**

On June 2, 2020, both sides filed separate cases in this Court seeking judicial review of certain factual findings or legal conclusions of the Hearing Officer. The Court consolidated the two actions. APS sought reversal of the Hearing Officer's

(1) conclusion that APS denied a FAPE based on a failure to evaluate for TS, and

(2) order for APS to pay for J.M.'s neurological evaluation for TS.

*See* ECF No. 74, at 11.

Plaintiffs challenged the Hearing Officer's denial of remedies for

(1) Wilson Reading System instruction,

(2) provision of audio texts, and

(3) TS-specific training for school staff.

*See id.*

On December 7, 2021, the Court rejected APS's appeal of the Hearing Officer's decision. In particular, the Court upheld the Hearing Officer's

(1) determinations that APS was on notice of a possible disability for TS as of January 24, 2018, and that APS's failure to evaluate denied J.M. a FAPE; and

(2) order that APS pay for a neurological evaluation to remedy the denied FAPE.

*See id.* at 20, 22.

The Court granted in part and denied in part Plaintiffs' appeal. In particular, the Court

(1) remanded the case to the Hearing Officer to determine whether a compensatory award of reading instruction was warranted;

(2) affirmed the Hearing Officer's denial of Plaintiffs' requests for audio texts and TS-
specific training.

*Id.* at 28, 30, 31.

### C.    The Hearing Officer's Decision on Remand

On March 10, 2022, the Hearing Officer ordered APS to provide compensatory education services to J.M. Specifically, the Hearing Officer ordered APS to provide a Structured Literacy Program to J.M. with annual educational evaluations by a designated pediatric neuropsychologist. *See* Hearing Officer's Remand Mem. Decision & Order 8, 12 (ECF No. 78). In addition, the Hearing Officer ordered APS to pay for the pediatric neuropsychologist's annual evaluations. *Id.* at 12 According to Plaintiffs, APS has not challenged this decision and has begun to provide the ordered remedy. *See* ECF No. 87, at 4; *see also* Resp. (ECF No. 92) (not disputing this assertion).

The IDEA-portion of the consolidated lawsuits is otherwise complete, so Plaintiffs have moved for attorneys' fees and costs.

## II.    Discussion

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Motions for attorneys' fees in suits brought under the IDEA are analyzed under the same legal standard as motions for attorneys' fees brought by prevailing parties in civil rights cases under 42 U.S.C. § 1988. *See, e.g.*, *Urban v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 728-29 (10th Cir. 1996) ("Congress intended the term 'prevailing party' to mean the same under § 1415(e)(4)(B) as it does under 42 U.S.C. § 1988."). "The 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates' and the

opposing party remains 'free to rebut a fee claim.'" *Eley v. Dist. of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107-08 (D.C. Cir. 1995)).

Determining a reasonable award of attorneys' fees under § 1988 is a two-step process. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). First, the court must determine whether an applicant is a prevailing party entitled to reimbursement of her fees. *See Hensley*, 461 U.S. at 433. Second, the court must determine what is a reasonable fee. *Id.*

## A.    Prevailing Party

"[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (internal quotation omitted). "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433 (internal quotation omitted). Put another way, a plaintiff is a prevailing party when the "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). Additionally, "'[t]he magnitude of the relief obtained is irrelevant for determining the prevailing party,' though the 'degree of the plaintiff's overall success goes to the reasonableness of a fee award'" at the second step of the two-step process. *Patrick G. by and through Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1206 (10th Cir. 2022) (quoting *Miller ex rel. S.M. v. Bd. of Educ.*, 565 F.3d 1232, 1247 (10th Cir. 2009)).

Here, Plaintiffs argue that they were the prevailing party because they received

(1) a determination that APS failed to provide a FAPE to J.M.;

(2) a determination that J.M. is not an English Learner and an order that APS correct that
diagnosis;

(3) a determination that J.M. did not receive instruction to address dyslexia because he was
misidentified as an English Learner;

(4) an order that APS pay for a TS evaluation because APS should have suspected TS as a
disability;

(5) an order that APS provide a Structured Literacy Program to J.M. with annual
educational evaluations as a compensatory education service; and

(6) an order that APS pay for ongoing educational evaluations by a pediatric
neuropsychologist.

*See* Reply 4 (ECF No. 93).

APS seems to challenge Plaintiffs' prevailing-party status for several reasons. *See* ECF No. 92, at 2-4. First, APS claims that Plaintiffs did not prevail before the Hearing Officer because Plaintiffs needed to appeal part of the Hearing Officer's Order. Second, APS argues that Plaintiffs did not prevail because they did not win a compensatory reading services award until remand. Third, APS contends that Plaintiffs did not prevail because they did not win all their requested compensatory services awards—for example, the provision of audio texts and TS-specific training for school staff. And fourth, APS asserts that J.M. already qualified for special education, so a TS diagnosis would not change his instruction, and therefore, Plaintiffs did not prevail.

The Court concludes that Plaintiffs prevailed. The list of six benefits that Plaintiffs received from this litigation shows that the legal relationship between Plaintiffs and APS changed to Plaintiffs' benefit. *See Farrar*, 506 U.S. at 111-12. In fact, Plaintiffs achieved prevailing-party status after their initial due process hearing because the Hearing Officer ordered APS to stop

6

classifying J.M. as an English Learner and to pay for a neurological identification. Plaintiffs began this litigation to "create concrete change and improvement in delivering appropriate special education to meet the student's unique needs and ensure FAPE." ECF No. 93, at 5. Mislabeling J.M. as an English Learner meant that educational services provided to J.M. "were not reasonably calculated to enable [J.M.] to make progress appropriate to his unique circumstances." ECF No. 13-1, at 355. So too, failing to evaluate J.M. for TS meant that "APS could not develop interventions and strategies unique to his needs, thus depriving him of educational benefits." ECF No. 74, at 20. Plaintiffs thus prevailed in the initial due process hearing because their victories catalyzed change that would improve J.M.'s education. *See, e.g.*, *Morrison v. Los Lunas Pub. Schs.*, No. 12-cv-00143, 2014 WL 12785100, at *2 (D.N.M. Nov. 24, 2014) (holding plaintiffs prevailed where due process hearing officer awarded a new education plan even though officer also denied additional 200 hours of compensatory education).

Plaintiffs' decision to appeal to this Court does not diminish their status as the prevailing party. Nor does the fact that Plaintiffs needed a remand to win a compensatory reading services award. IDEA authorizes awards for attorneys' fees in both administrative proceeds and civil actions before federal district courts. *See Miller ex rel. S.M.*, 565 F.3d at 1247 (reviewing district court's decisions on attorneys' fees at different stages in litigation). Plaintiffs' achievement of a compensatory reading services award on remand confirms—rather than diminishes—their prevailing-party status.

So too, Plaintiffs prevailed despite the Court's denial of some of Plaintiffs' requested compensatory services awards—the provision of audio texts and TS-specific training for school staff. As noted above, "[t]he magnitude of the relief obtained is irrelevant for determining the prevailing party." *Patrick G. by and through Stephanie G.*, 40 F.4th at 1206 (quoting *Miller ex rel.*

*S.M.*, 565 F.3d at 1247). Among other victories, Plaintiffs received the compensatory services award of a Structured Literacy Program with annual evaluations, which further changed the legal relationships of the parties to Plaintiffs' benefit. *See, e.g.*, *Morrison*, 2014 WL 12785100, at *2.

Finally, the Court rejects—once again—APS's argument that a TS evaluation would not make a practical difference in J.M.'s education. To quote from the Court's earlier memorandum opinion and order:

> As the Hearing Officer correctly explained, without knowing whether J.M. has TS, APS could not develop interventions and strategies unique to his needs, thus depriving him of educational benefits. The Hearing Officer suggested that if J.M. is eventually diagnosed with TS, then his support plans will likely require assistance beyond treatment of "behaviors in general."

ECF No. 74, at 20 (quoting ECF No. 13-1, at 341). In short, APS's arguments about the practical effects of the TS evaluation do not detract from Plaintiffs' prevailing-party status.

In sum, the Court determines that Plaintiffs prevailed and are thus eligible for reasonable attorneys' fees. *See Hensley*, 461 U.S. at 433.

### B.    Reasonable Attorneys' Fees

To arrive at a reasonable fee, courts generally use the "lodestar," which is the "product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Hensley*, 461 U.S. at 433). Courts may reduce the award where the documentation of hours is inadequate. *Hensley*, 461 U.S. at 433.

In an IDEA action "[w]here the parent 'has obtained excellent results, [the] attorney should recover a fully compensatory fee,' and there should be no reduction in the award 'simply because [the parent] failed to prevail on every contention.'" *R. M-G. v. Bd. of Educ.*, 645 F. App'x 672, 676 (10th Cir. 2016) (second and third alterations in original) (quoting *Hensley*, 461 U.S. at 435); *see also Robinson*, 160 F.3d at 1283 ("[W]hen a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the

plaintiff's fee award."). But if "[a parent] has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *R. M-G*, 645 F. App'x at 676 (alteration in original) (quoting *Hensley*, 461 U.S. at 436).

Plaintiffs aver that their attorney worked 246.45 compensable hours at a rate of $300.00 per hour. With a gross-receipts tax of $5,729.96, this amounts to $79,664.96. *See* Pls.' Ex. 1, ¶ 15 (ECF No. 87-1) (affidavit of Plaintiffs' attorney stating that hourly rate of $300.00 has been attorney's hourly rate for around five years); Pls.' Ex. 2 (ECF No. 87-2) (hours log). Plaintiffs request

(1) $75,000.00, which is a reduced amount from the $79,664.96,

(2) "additional fees accrued to litigate this fees claim through motion practice,"

(3) $3,588.26 to reimburse the cost of the TS evaluation ordered by the Hearing Officer,

(4) $402.00 in filing fees in this Court, and

(5) $1,745.84 for an expert witness fee for testimony in the remand hearing.

ECF No. 87, at 5.[2]

APS does not object to the reasonableness of the Plaintiffs' attorney's time spent or hourly rate. The Court will thus accept as reasonable the amount of $75,000.00, reduced from the calculated amount of $79,664.96. But APS does make three arguments why the Court should reduce Plaintiffs' requested award.

First, APS argues that "Counsel for Student should not be reimbursed for any time spent before the complaint was filed, for any time spent in mediation, or any time spent on the remanded

---

[2] The sum of these requests, not including the additional fees needed to litigate the fees claim, is $80,736.10. Plaintiffs state the sum as $80,334.10. ECF No. 87, at 5. The Court will consider each requested item rather than Plaintiffs' requested total.

matter." ECF No. 92, at 4. Second, APS contends that the remand hearing was only necessary because Plaintiffs first provided insufficient proof to the Hearing Officer, so each party should be responsible for its attorneys' fees on remand. *Id.* at 4-5.

These assertions, both made without citation, conflict with the IDEA's allowance of attorneys' fees for "work performed in both administrative proceedings and court actions." *M.S. ex rel. J.S. v. Utah Schs. for the Deaf & Blind*, 822 F.3d 1128, 1137 (10th Cir. 2016). By following the statute's procedure—requesting a due process hearing and then bringing a civil action in a federal district court—an attorney will complete work before filing a complaint in federal district court. *See* 20 U.S.C. § 1415(f)(1)(A), (i)(2)(A). So too, the statute does not distinguish between initial administrative hearings and administrative hearings on remand. *Cf. H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 409-10, 413 (3d Cir. 2017) (holding plaintiffs eligible for attorneys' fees in an IDEA case where plaintiffs first lost before a hearing officer on procedural grounds, then won a reversal and remand in federal district court, and ultimately obtained the relief they sought on remand before the hearing officer).

APS's third reason for reducing Plaintiffs' request for attorneys' fees is that "the evidence clearly showed [APS] followed the process established by the State of New Mexico for determining whether a student was [an English Learner]." ECF No. 92, at 5. But APS does not cite the record to support this claim. In fact, the Hearing Officer addressed "whether [APS] denied [J.M.] a FAPE when it determined [J.M.] was an English Language Learner" and concluded that APS's mislabeling of J.M. as an English Learner denied J.M. a FAPE. *See* ECF No. 13-1, at 289, 355. Simply put, the ultimate correction of J.M.'s classification as an English Learner is a reason to award—rather than to reduce—attorneys' fees.

In short, APS has not shown a reason to reduce Plaintiffs' proposed award for attorneys' fees. That said, the Court holds that Plaintiffs fail to meet their burden to establish their entitlement to two parts of their requested award. *See Eley*, 793 F.3d at 100.

First, Plaintiffs requested "additional fees accrued to litigate this fees claim through motion practice." ECF No. 87, at 5. But Plaintiffs have not specified a reasonable fee for the work needed to prepare their present motion. Nor do Plaintiffs highlight where their exhibits show the hours spent preparing this motion. *See, e.g.*, ECF No. 87-2, at 29 (Plaintiffs' attorney's hours log) (showing last entries from September 2022 but not specifying work for this motion). Thus, the Court will not award additional fees for this motion. *See Eley*, 793 F.3d at 100.

Second, Plaintiffs requested $1,745.84 for an expert-witness fee for testimony in the remand hearing. But the Supreme Court has held that IDEA does not "authorize[] prevailing parents to recover fees for services rendered by experts in IDEA actions." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 293-94 (2006). Plaintiffs try to avoid this holding, apparently by cabining *Murphy* to experts at administrative hearings (rather than experts in district court hearings) and by contending that the expert testimony in the administrative remand hearing was more like expert testimony in the district court because this Court ordered the remand. *See* ECF No. 87, at 4.

Plaintiffs' argument fails because *Murphy* is not limited to administrative hearings. To the contrary, *Murphy* considered 20 U.S.C. § 1415(i)(3)(B), which authorizes "an award of fees for work performed in both administrative hearings *and court actions*." *M.S. ex rel. J.S.*, 822 F.3d at 1137 (emphasis added). After construing the statute's text, *Murphy* stated, "the terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants." 548 U.S. at 300. Thus, *Murphy* held that IDEA did not authorize expert-witness

11

fees in both administrative hearing and court actions. And even if the Court's reading of *Murphy* were incorrect, and notwithstanding Plaintiffs' attempt to analogize their expert's testimony in the remand hearing to testimony in the district court, Plaintiffs' expert actually testified in the administrative hearing. Thus, the Court will deny Plaintiffs' request for expert-witness fees.

Having reduced the requested award, the Court will award these attorneys' fees and costs:

(1) $75,000.00, which is a reduced amount from the $79,664.96,

(2) $3,588.26 to reimburse the cost of the TS evaluation ordered by the Hearing Officer,[3] and

(3) $402.00 in filing fees in this Court.

This totals to $78,990.26.

## III.    Conclusion

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiffs Carla Cabrera and Vidal Silva's *Motion for Award of Attorney Fees and Costs Under IDEA* (**ECF No. 87**) is **GRANTED** in the amount of **$78,990.26**. Plaintiffs' requested award is otherwise **DENIED**, as specified above.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] The Court recognizes that this amount for $3,588.26 is not an award for attorneys' fees or costs. Still, the Court includes it here to avoid additional motion practice—with additional attorneys' fees—to enforce an award that was already ordered by the Hearing Officer.